THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

HEATHER BRELAND, :
:
    Plaintiff, :
:
: Civil Action
v. : No. 5:07-cv-27(CAR)
:
CITY OF CENTERVILLE, GEORGIA, :
and TERRY LEE WARE, JR., :
Individually and in his Official :
Capacity as a Police Officer of the :
City of Centerville, Georgia, :
:
    Defendants. :
:

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant City of Centerville, Georgia ("Centerville") has moved the Court to grant summary judgment as to all claims against it in this case. Plaintiff has brought constitutional claims under 42 U.S.C. § 1983 and tort claims under Georgia law, arising from a sexual assault committed by Officer Terry Ware. It is undisputed that Officer Ware sexually assaulted Plaintiff on December 27, 2004, while she was in his custody following an arrest on forgery charges. On June 1, 2006, Ware pled guilty to the crime of Sexual Assault on a Person in Custody and is currently serving a prison sentence for the crime. The question before the Court on the present motion is whether Centerville can be held liable for Ware's actions. The evidence in the record before the Court is insufficient to create genuine issues of material fact as to Plaintiff's claims against Centerville. Accordingly, and for the reasons set forth below, Centerville's Motion for Summary Judgment (Doc. 13) is **GRANTED**.

**I.**    **Section 1983 Claims**

1

Plaintiff's Section 1983 claims against Centerville fail because she has not produced evidence that would establish a causal link between her injury and actions of Centerville. Although her injury arose from an act committed by an employee of Centerville, Plaintiff may not bring constitutional claims against the municipality on a theory of *respondeat superior*, but must show that specific actions by the municipality led to her injury. The Supreme Court has held that "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents." Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipality may be held liable only for its own actions, that is, "when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. There is no liability unless the municipality's policy or custom is the "moving force" behind the constitutional violation. Id.

In this case, there is no evidence that a policy or custom of Centerville caused the injuries that Plaintiff sustained as a result of Officer Ware's sexual assault. As might be expected, Plaintiff has presented no evidence that Centerville had an explicit policy encouraging officers to commit sexual assaults against citizens in their custody or an affirmative custom of allowing such behavior by its officers. It is undisputed that none of Officer Ware's superiors had any knowledge of his sexual assault on Plaintiff, or of prior sexual contact with another detainee (Shasta Winters), until after Ware had been discharged. Immediately upon learning of the incident, the Chief of Police initiated an investigation and referred the matter to the Georgia Bureau of Investigation. Ware was prosecuted for the assaults and sentenced to prison.

Lacking evidence of a policy or custom directly encouraging sexual assaults, Plaintiff attempts to establish municipal liability under theories of negligent training and supervision and of

negligent hiring and retention. Her negligent training and supervision argument is based primarily on Centerville's policy's regarding the transport of prisoners. The negligent hiring and retention argument is based on Ware's record of prior disciplinary actions during his tenure at Centerville and while previously employed by the City of Fort Valley. The evidence presented by Plaintiff, accepted as true and considered in the light most favorable to Plaintiff, is not sufficient to establish liability against Centerville under either theory.

### 1.    **Negligent Training and Supervision**

As to her theory of negligent training and supervision, the evidence in this case is insufficient to create a genuine issue of material fact. To establish municipal liability based on a claim of inadequate training, a plaintiff must show that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). To establish liability under this standard, a plaintiff must first show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390. Second, after identifying a specific deficiency in the training program, a plaintiff must show that the deficiency was "closely related to the ultimate injury." Id. The evidence in this case does not indicate such an obvious deficiency in training as to constitute deliberate indifference by Centerville, and the deficiencies about which Plaintiff complains, related to the transport of arrestees, were not closely related to Plaintiff's ultimate injury.

Plaintiff contends that Centerville failed to establish appropriate policies and training regarding the transportation of an arrestee in an officer's patrol vehicle. Plaintiff was being

transported in the front seat of Ware's patrol vehicle when the assault occurred. She contends that the assault would not have occurred had Ware been trained not to transport arrestees in the front seat.

In her Statement of Material Facts, Plaintiff provides a detailed description of Centerville's policy regarding the transportation of arrestees:

> Centerville's policy with regard to transporting prisoners is that they be placed in the back seat of the patrol vehicle (Pardo Dep. pp. 35-36). (Coley Dep. p. 21). The reason for the back seat policy requirement is that there is a separation cage between the prisoner and the officer. (Pardo Dep. p. 36). The purpose of Centerville's policy is to protect not only the officers, but the public and persons in custody from physical harm. (Coley Dep. p. 19). (Pardo Dep. p. 30). However, Ware was not just a regular patrol officer. Ware was the K-9 officer. Ware's K-9 vehicle was a Ford Explorer equipped with a cage in the back. (Pardo Dep. p. 36). Prior to the Explorer, Ware was driving a Crown Victoria with a cage in the back seat. (Pardo Dep. p. 36). Ware knew that prisoners were to be transported in the back seat of the vehicle . . . , but the reason he did not transport in the back seat was because he had a K-9 unit. (Ware Dep. p. 22). Ware received intensive training as a K-9 officer, including how to transport the dog in his K-9 unit. (Ware Dep. p. 24). However, Ware received no training on Centerville's policies for transporting prisoners. (Ware Dep. p. 21). Despite the fact that Ware was the K-9 officer, Centerville had no policy with regard to transportation of persons in the K-9 vehicle. (Pardo Dep. p. 36). It was Centerville policy to transport persons in custody in the back seat at all times, even the K-9 officer. (Pardo. Dep. p. 36). Thus, if Ware needed to transport someone he could call for transport. (Pardo Dep. p. 36-37). However, Pardo recognized that at times, due to the fact that Centerville is a small police department, there would be times when another transport would not be available and the K-9 officer would have to transport his prisoner. (Pardo Dep. p. 37). Pardo communicated his knowledge of Ware's transporting prisoners in the front seat of

4

> his K-9 unit to Special Agent Leigh Lightner during the GBI investigation of Ware. "Chief Pardo advised 95% of the time, Ware would always have another officer transport an arrestee because Ware is a K-9 handler and has a dog in his back seat, and he would have to place people in his front passenger seat due to the dog being in the back." (Plaintiff's Ex. 10 p. 28). . . . Ware transported prisoners in the front seat of his K-9 unit on more than one occasion when other officers were not available to transport. (Ware Dep. pp. 31, 42).

Plaintiff's Statement of Material Facts (Doc. 21), pp. 12-14.

Plaintiff's own characterization of the facts defeats her claim of inadequate training. Plaintiff acknowledges that Centerville had a policy regarding transportation of arrestees and that Ware knew the policy. Because Ware knew of the policy, the fact that he did not receive specialized training in the policy is of no consequence. The policy is simple enough: (1) arrestees are to be transported in the back seat; (2) because the K-9 unit has no back seat, the K-9 officer should request another officer to transport; (3) if another officer is not available for transport and transport is necessary, an exception may be made and the arrestee may be tranported in the front seat. There is no indication that specific training sessions were required to teach this policy, and it is undisputed that Ware knew of the policy. Centerville's practice of permitting occasional exceptions to its back-seat policy when alternate transport was not available was a reasonable concession to the needs of a small police force, and does not evidence deliberate indifference to the safety of persons in custody.

Centerville had additional policies and procedures specifically related to transport of prisoners of the opposite sex. According to Centerville's Standard Operating Procedures Manual, it was "preferable that prisoners be transported by officers of the same sex." Exhibits to Ware Dep. (Doc. 23) Ex. 7 ¶ L. Because Centerville was a small force with limited manpower (and womanpower), it was not possible to have an officer of the same sex provide transport in every

situation. When it was necessary for an officer to transport an arrestee of the opposite sex, the policy provided that the transporting officer

> will notify Central, giving the gender of the prisoner and stating the beginning mileage from the transporting vehicle's odometer at the moment the transport began. The transporting officer will drive to [his] destination, and immediately upon arriving, will notify Central of the ending mileage from the vehicle's odometer. The officer should ensure that dispatch acknowledges with the ending time.

Id. The GBI's investigation of the sexual assaults shows that Ware gave his beginning mileage but failed to give his ending mileage when he transported Plaintiff to jail on December 28, 2004. Plaintiff's Response (Doc. 20) Ex. 2 p. 30. He complied with this policy when he transported Shasta Winters on June 28, 2004. Id., p. 31. His compliance with the policy indicates that he was adequately trained in its provisions.

Plaintiff's argument regarding inadequate training fails because the offense Ware committed against Plaintiff was obviously wrong and was not connected to any training he received or should have received. For liability to attach to Centerville based on deficient training, "the identified deficiency in [its] training program must be closely related to the ultimate injury." City of Canton, 489 U.S. at 391. No training is required to teach police officers not to commit sexual assaults. Sexual assault is illegal, and police officers can reasonably be expected to know, without training, that they are not allowed to take sexual advantage of their prisoners. Ware knew that what he was doing was improper and unlawful. Ware Dep. (Doc. 25) p. 40. When caught he pled guilty to the crime and was sentenced to prison. Thus, his actions did not result from a deliberate indifference on the part of Centerville, but from his own criminal intent. The imposition of liability against a municipality for the actions of one of its officers

6

> requires a likelihood that the failure to train or supervise will result in a the officer making the wrong decision. Where the proper response is . . . obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.

Walker v. City of New York, 974 F.2d 293, 299-300 (2nd Cir. 1992) (quoted in Sewell v. Town of Lake Hamilton, 177 F.3d 488, 490 (11th Cir. 1997). An officer does not need to be trained not to commit sexual assault, and even the best training program will not stop an officer who has a criminal intent from committing a crime.

### 2. Negligent hiring and retention

Plaintiff's argument concerning negligent hiring and retention is likewise unpersuasive, in that there is no direct causal link between the injury that Plaintiff suffered and Centerville's decision to hire and retain Ware as an officer. Plaintiff contends that Centerville should be liable for Ware's conduct because it hired him in spite of his prior discharge by the City of Fort Valley and because of his record of disciplinary problems while employed by Centerville. The record shows, however, that Ware's disciplinary history was primarily related to failures to comply with procedures with no relationship to the offense he committed against Plaintiff. None of the incidents for which he was disciplined concerned sexual assault or would have indicated that he was likely to commit a sexual or physical assault. As such, leaving aside the question of whether Centerville was negligent in its investigation of Ware's application for employment or in its retention of Ware despite his disciplinary problems or whether the hiring decision was made by a final policymaker, there is no evidence that would link this negligence to the injury that Plaintiff suffered, or otherwise indicate deliberate indifference to the possibility of such an injury.

7

As noted above, a municipality can be liable for an injury only when it can be shown that its actions were the "moving force" behind the specific injury at issue in the case. As the Supreme Court has observed, "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 410 (1997). In cases alleging inadequate screening of an applicant's background the deliberate indifference standard is "a stringent standard of fault." Id. "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." Id. at 412. In other words, there must be a "strong" connection between the background of the particular applicant and the specific constitutional violation alleged.

An example of the sort of linkage required under the standard set forth in Bryan County is found in Jones v. James, 2005 WL 459652 (D.Minn., Feb. 24, 2005), a case cited in Plaintiff's Response Brief. In Jones, the defendant officer had sexual intercourse with the plaintiff while she was under his supervision as an inmate in the county jail. Evidence showed that the defendant officer had a history of "crude and insulting behavior towards women" and "allegations of sexual improprieties" while previously employed with other law enforcement agencies. Id. at *3. One of his prior employers testified that he "had a tendency to insult and cause stress to members of the female sex." Id. Another testified that he had been investigated during his employment and that the investigation "revealed allegations of a sexual nature which indicated [he] could not be trusted around teenage girls." Id. At another agency, he had been accused of sexually harassing a woman

8

and assaulting her with a nightstick. The court found that this evidence established a genuine issue of material fact with respect to whether the defendant sheriff acted with deliberate indifference in hiring the defendant officer without conducting an adequate background check.

The contrast between the evidence in Jones and the evidence in this case is stark. In Jones the defendant officer had a long record of sexual misconduct and threatening behavior towards women. In this case, there is no evidence of such a record of sexual misconduct by Ware, whether during his employment at Fort Valley or during his employment with Centerville. Ware's record might have suggested that he was careless and rash, but it did not give his employers any reason to fear he would pose a danger to female arrestees.

With regard to Centerville's initial decision to hire Ware, Plaintiff has presented evidence that Ware had been previously discharged by Fort Valley because he was "not responding to training" and was "[m]aking incorrect decisions and exercising poor judgment under stress." Plaintiff's Statement of Facts (Doc. 21) ¶ 1. There is no evidence that Ware had a record of sexual assault against women in his custody. There is no evidence that he had a record of any similar conduct, such as sexual harassment or physical assault. Nothing in his record would have given Centerville reason to expect that Ware would commit the sort of offense he committed against Plaintiff, such that it would have demonstrated deliberate indifference on Centerville's part in hiring him. In the absence of a connection between Ware's record as an officer in Fort Valley and the specific violation alleged by Plaintiff, there can be no liability against Centerville.

Similarly, with regard to Centerville's retention of Ware prior to learning of the assault against Plaintiff, nothing in Ware's record as an officer for Centerville would have given reason to expect him to commit such an assault. The disciplinary events in Ware's file indicated that he had

9

a tendency to be careless in his observation of procedures and rash in his decision-making. On June 30, 2003,Ware was suspended for leaving Centerville's jurisdiction to assist Bibb County authorities in a chase and for failing to slow down while running through red lights during the chase. On September 16, 2003, he was given a written reprimand for leaving the city unattended when he went to assist with a dog search in another jurisdiction. On November 18, 2003, he was suspended for leaving an intoxicated prisoner unattended in order to assist in a chase in another jurisdiction. On September 30, 2004, he was given a written reprimand for insubordination in failing to return drugs used in training his dog. On October 28, 2004, he was counseled for threatening to arrest a citizen without probable cause, for having a citizen's car towed as a punitive measure, and for failing to complete a training program with his dog. Finally, Ware was discharged as a result of a January 30, 2005 incident in which he threatened a citizen and had her van towed during an investigation. None of these incidents indicates that Ware was sexually aggressive or violent towards women in his custody.

In addition to these specific disciplinary incidents, Ware's record demonstrated a bad attitude and a general reputation for being disrespectful and insubordinate. In several of the incidents described above, he was reprimanded for speaking disrespectfully to his superiors or to citizens. Other officers described him as "intimidating" or a "hard ass." The department received numerous complaints from citizens about Ware's demeanor when dealing with them. There is no record that any of these complaints involved sexual harassment, sexual assault, or physical assault. The incidents in Ware's history certainly show that he was a problem officer and might have deserved to be fired. They do not show, however, that he would commit a sexual assault as a known or obvious consequence of Centerville's failure to fire him sooner than it did. There is therefore

insufficient evidence to create a genuine issue of material fact as to Centerville's deliberate indifference to Plaintiff's Fourth Amendment rights.

## II. State Law Claims

In addition to her constitutional claims under Section 1983, Plaintiff brings state law tort claims for negligent hiring and retention, negligent training and supervision, and for breach of duty in transporting Plaintiff.[1] Although the state law is somewhat less stringent than the law under Section 1983, these claims are subject to summary judgment for the same reason that the constitutional claims were subject to summary judgment: there is insufficient evidence to create a genuine issue of material fact as to causation. The incidents in Ware's record, described above, would not have given Centerville reason to know that Ware posed a reasonably foreseeable risk of inflicting the sort of harm he inflicted on Plaintiff.

### 1. Negligent Hiring and Retention

As with all torts, a claim for negligent hiring and retention requires evidence both of negligence and causation. Under Georgia law, an employer

> has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's "tendencies" or propensities that the employee could cause the type of harm sustained by the plaintiff.

Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004). The foreseeability of the harm is critical to the question of causation. It is not enough to show simply that an applicant was

---

[1] Defendant objects to Plaintiff's state law claims on the argument that they were not pled in the Complaint. Plaintiff in response has moved for leave to file an amended complaint (Doc. 30). It appears that the original Complaint states these claims sufficiently to meet the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Sufficient discovery has been conducted on these claims and they can be addressed on their merits. Accordingly, the Motion for Leave to File Amended Complaint is **DENIED**, as it is moot.

not competent for the job. There must be evidence of "a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff." Id. "The employer is subject to liability only for such harm as is within the risk." Id. (quoting Restatement (Second) of Agency, § 213 Comment (d)).

Conceding for purposes of this motion that there is a jury question as to whether Centerville was negligent in its screening procedures when it hired Ware, the Court finds that there is insufficient evidence to submit the question of causation to a trial. The particular incompetencies suggested in Ware's record as an officer first in Fort Valley and later in Centerville did not evidence a propensity for sexual assault or make it reasonably foreseeable that Ware would commit the sort of assault that he committed against Plaintiff. Ware's record, in its totality, suggests that he had a bad attitude, a surly and rude demeanor, a propensity to rash decisions, and an excessive love of the chase. Plaintiff has not produced evidence of a single incident involving physical abuse of a subject, much less sexual assault.

The lack of a causal connection in this case is revealed by comparison to cases in which Georgia courts have found that there was evidence of such a connection. In one case dealing with a sexual assault by a police officer against a woman in his custody, the Court of Appeals held that the plaintiff had presented evidence from which a jury could find that the employer should have known the defendant officer was prone to commit a sexual assault. In that case, Harper v. City of East Point, 515 S.E.2d 623 (Ga.Ct.App. 1999), the court noted that prior to hiring, the city was aware that he had pled guilty to making harassing phone calls to a girl friend and that investigation of a citizen complaint had uncovered three sexually inappropriate encounters between the officer and female citizens. Id. at 625. After the internal investigation of the complaint, the investigating

officer warned her superiors that the officer's behavior was a "textbook case" of sexual deviancy and should be looked into further. Id. Based upon this evidence, a jury could have found that the officer's conduct "gave warning to the City that his behavior reflected an escalating sexual deviancy likely to result in the sexual assault of a female while he was on duty." Id. The evidence therefore warranted a denial of summary judgment.

In this case, in contrast to Harper, the evidence does not suggest any pattern of sexual deviancy. There is no evidence before the Court that Ware had a record of inappropriate behavior with members of the opposite sex. Although Ware was in many ways a bad officer, there is nothing, either at the time he was hired or up to the time he was fired, that would have led Centerville to suspect Ware was liable to commit a sexual assault. If this were a case involving a traffic accident during a pursuit or an illegal search and seizure, there might indeed be a question of fact for the jury. In a case involving a sexual assault, there is none.

It should be noted that in Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004), the Supreme Court of Georgia rejected some of the language used by the Court of Appeals in Harper. It did not criticize the holding of Harper, and its decision does not change the result in this case. In Munroe the court rejected as "restrictive and inflexible" any suggestion in Harper that "to prevail on a negligent hiring/retention claim, a plaintiff must show the defendant employer knew or should have known of an employee's propensity to commit the tortious or criminal act that caused the plaintiff's injury." Munroe, 596 S.E.2d at 606. As in this case and in Harper, the defendant in Munroe had committed a sexual assault against a person in his custody.[2] The court reasoned that it was not necessary to present evidence of a propensity to commit specifically sexual assaults, but

---

[2]The defendant employee in Munroe was not a police officer, but rather a mental health assistant in a residential treatment facility.

rather that it was sufficient to show that the employee "posed a reasonably foreseeable risk of personal harm to patients." Id.

Although the Supreme Court in Munroe rejected Harper's definition of foreseeability as too stringent, it affirmed the granting of summary judgment in favor of the defendant employer on the plaintiff's negligent hiring/retention claim. The evidence related to the employee's background showed that he had misrepresented his education, his experience in the field, and the reason for his discharge from a prior employment. The court held that there was "no question of fact that these problems did not involve any accusations of criminal activities or violent behavior or any other indication that [the employee] posed any risk of personal harm to others." Id. at 608.

In this case, similarly, the problems in Ware's record do not involve accusations of criminal activities or violent behavior or otherwise indicate a risk of personal harm to others, whether of a sexual nature or otherwise. There is no evidence that he had a criminal record of any kind. There is no evidence of citizen complaints involving physical abuse. There is no evidence of any prior allegations of sexual harassment or inappropriate sexual contact between Ware and other officers, prisoners, or citizens. Nothing in his past suggests a proclivity or tendency to assault others physically or sexually. His record of being rude, insubordinate, and rash did not make it foreseeable to Centerville that he would inflict the sort of harm he inflicted on Plaintiff.

### 2. Negligent Training and Supervision

Plaintiff's state law claim for negligent training and supervision is based on her argument that Centerville's policies and training regarding the transport of prisoners, discussed above in the context of her Section 1983 claims, led to Ware's assault. This claim fails for lack of evidence that the employer was aware of a specific need for training to prevent a reasonably foreseeable risk of

harm. See Remediation Resources, Inc. v. Balding, 635 S.E.2d 332, 335 (Ga.Ct.App. 2006). The evidence shows that Centerville had a reasonable policy regarding the transport of prisoners which was designed to protect officers and arrestees, but which required a degree of flexibility because of the limited size of the police force. The record also shows without dispute that Ware was aware of this policy. It is also without dispute that Ware was aware that the sexual acts he committed against Plaintiff were improper and illegal. There is no evidence to indicate that Centerville should have foreseen that additional training was needed in the area of sexual assault or with regard to the transportation of arrestees.

### 3. Breach of Duty in Transporting Plaintiff

Finally, Plaintiff seeks to impose liability for Ware's actions against Centerville under a theory of *respondeat superior* under Georgia law. Georgia courts have consistently held, however, "that an employer is not responsible for the sexual misconduct of an employee." Alpharetta First United Methodist Church v. Stewart, 472 S.E.2d 532,    (Ga.Ct.App. 1996). See also Piedmont Hosp. v. Palladino, 580 S.E.2d 215 (Ga. 2003); Stewart v. Storch, 617 S.E.2d 218 (Ga.Ct.App. 2005). "The basis for these holdings is that these types of torts, being purely personal in nature, are unrelated to the employee's duties and, therefore, are outside the scope of employment because they were not in furtherance of the master's business." Stewart, 472 S.E.2d at 536. As such, Centerville is entitled to summary judgment with regard to Plaintiff's *respondeat superior* claims.

## III. Conclusion

Because Plaintiff has failed to set forth sufficient evidence to allow a reasonable jury to impose liability against Defendant Centerville for the actions of Defendant Ware, there are no genuine issues of material fact in this case as to claims against Centerville, and it is entitled to

judgment as a matter of law. Accordingly, Centerville's motion for summary judgment is **GRANTED**.

It is SO ORDERED this 28th day of May, 2008.

S/ C. Ashley Royal  
C. ASHLEY ROYAL, JUDGE  
UNITED STATES DISTRICT COURT

chw